IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
EL DORADO DIVISION

COURTNEY JERRELL DOUGLAS                                                    PETITIONER

v.                                       Case No. 1:19-cv-1061

DEXTER PAYNE, Director,
Arkansas Department of Correction                                           RESPONDENT

**ORDER**

Before the Court is the Report and Recommendation filed by the Honorable Barry A. Bryant, United States Magistrate Judge for the Western District of Arkansas. ECF No. 10. Judge Bryant recommends that Petitioner Courtney Jerrell Douglas's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 be denied. Petitioner has responded with objections. ECF No. 14. Respondent has filed a response to Petitioner's objections. ECF No. 19. The Court finds the matter ripe for consideration.

**I. BACKGROUND**

After a jury trial in Union County, Arkansas, Petitioner Douglas was convicted of first-degree murder and being a felon in possession of a firearm. He was sentenced as a habitual offender and received a term of life imprisonment for the first-degree murder conviction with a consecutive fifteen-year enhancement for using a firearm to commit the murder. He was sentenced to a forty-year term of imprisonment for being a felon in possession of a firearm to run consecutively with the first-degree murder and enhancement sentences.[1]

After trial, some of Douglas's family members and friends alleged that they were excluded from the courtroom during voir dire. Upon learning this information, Douglas, represented by postconviction counsel, moved for a new trial, claiming that his First and Sixth

---

[1] Douglas is incarcerated at the Cummins Unit of the Arkansas Department of Corrections in Grady, Arkansas.

Amendment rights were violated when several of his relatives and friends were excluded from the courtroom during voir dire. After a hearing, the Union County Circuit Court denied the motion for new trial, finding that there was freedom of access to the courtroom.

Douglas filed a direct appeal, arguing that the trial court erred by denying his motion for new trial and denying his request to instruct the jury on manslaughter and justification. The Arkansas Supreme Court affirmed Douglas's convictions. *Douglas v. State*, 2017 Ark. 70, 511 S.W.3d 852 (2017).

Douglas then filed a timely petition for postconviction relief pursuant to Arkansas Rule of Criminal Procedure 37.1, arguing that his trial counsel was ineffective for failing to present the proper jury instructions on manslaughter and justification. Douglas's Rule 37.1 petition was denied. The Union County Circuit Court concluded that because Douglas armed himself, went to the victim's home to confront him, and then shot him multiple times, there was no rational basis for giving jury instructions on justification and manslaughter.

Douglas appealed the denial of his Rule 37.1 petition, and the Arkansas Supreme Court affirmed the circuit court's denial of Douglas's ineffective assistance of counsel claim as to the justification instruction. *Douglas v. State*, 2018 Ark. 89, at 5-9, 540 S.W.3d 685, 690-91 (2018).[2] In a later opinion, the Arkansas Supreme Court affirmed the circuit court's denial of Douglas's ineffective assistance of counsel claim as to the manslaughter instruction. *Douglas v. State*, 2019 Ark. 57, at 7-14, 567 S.W.3d 483, 490-93 (2019).

Douglas then filed in this Court a timely Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254, which is the matter currently before the Court. ECF No. 1. In the instant

---

[2] Douglas's appeal of his Rule 37.1 petition was affirmed in part and reversed in part. The Arkansas Supreme Court reversed and remanded the issue regarding Douglas's ineffective assistance of counsel claim as to the manslaughter instruction, finding that the circuit court erred by failing to make written findings on this claim in accordance with Rule 37.3(a). *Douglas*, 2018 Ark. 89, at 9-12, 540 S.W.3d at 691-92.

petition, Douglas raises five claims: (1) he was denied his Sixth Amendment right to a public trial; (2) officers of the Union County Circuit Court improperly destroyed video evidence; (3) his postconviction counsel was ineffective because he did not seek forensic analysis to retrieve the video record; (4) his trial counsel was ineffective because he did not request the appropriate affirmative defense jury instruction; and (5) the evidence was insufficient to convict him of first-degree murder because the deadly force was justified. Judge Bryant has issued a Report and Recommendation in which he recommends that the Court deny the instant petition. ECF No. 10. Petitioner has responded with specific objections. ECF No. 14.

## II. STANDARD OF REVIEW

A federal court may grant a writ of habeas corpus if the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; . . . or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2).

A state court acts contrary to clearly established federal law if it applies a legal rule that contradicts the Supreme Court's prior holdings or if it reaches a different result from one of the Supreme Court's cases despite confronting indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). A state court violates the "unreasonable application" clause of 2254(d)(1) if it "identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case." *Id.* at 407. "[I]t is not enough for [the court] to conclude that, in [its] independent judgment, [it] would have applied federal law differently than state court; the state court's application must have been objectively unreasonable." *Rousan v. Roper*, 436 F.3d 951, 956 (8th Cir. 2006).

When reviewing whether a state court decision involves an "unreasonable determination of the facts" in light of the evidence presented in the state court proceedings, state court findings of basic, primary, or historical facts are presumed correct unless the petitioner rebuts the presumption with clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Collier v. Norris*, 485 F.3d 415, 423 (8th Cir. 2007). "[E]ven erroneous fact-finding by the [state] courts will not justify granting a writ if those courts erred 'reasonably.'" *Weaver v. Bowersox*, 241 F.3d 1024, 1030 (8th Cir. 2001).

### III.  DISCUSSION

Douglas raises five claims in his *pro se* petition, and the Court has conducted a *de novo* review of each claim in light of Douglas's objections to the Report and Recommendation.

#### A. Sixth Amendment Claim

Douglas claims that he was denied his Sixth Amendment right to a public trial when a court security officer prevented his family members and friends from entering the courtroom during voir dire. ECF No. 1, pp. 4-8. Based on this claim, Douglas moved for a new trial, and the circuit court held a hearing on the motion. The circuit court heard testimony from Douglas's family members and court security officers and reviewed video surveillance from inside the courtroom. The circuit court concluded that no court security officer prevented Douglas's family members from entering the courtroom.

Douglas raised this issue on direct appeal, and the Arkansas Supreme Court addressed it as follows:

> Here, the circuit court, after hearing the testimony of Douglas's family members and court security, and after reviewing video surveillance from inside the courtroom, concluded that there was no closure, not even a *de minimus* one. A circuit court's finding of fact will not be reversed unless clearly erroneous. *Strom v. State*, 348 Ark. 610, 74 S.W.3d 233 (2002). The court affirmatively stated that it did not close the courtroom, and there

> is nothing in the record to suggest otherwise. Some family members claimed court security kept them from entering the courtroom. However, the court found the testimony of the family members was "without credibility," stating their version of events was "just not believable." In its written order, the circuit court further stated that court security "did not prevent the public or defendant's family or friends from access to and/or entry into the courtroom during the voir dire/jury selection process." Accordingly, the circuit court's findings were based primarily on its assessment of the credibility of the witnesses. As the circuit court is in a superior position to evaluate the credibility of the witnesses, we defer to its assessment of the witnesses' testimony. *See Johnson v. State*, 2015 Ark. 387, 472 S.W.3d 486. Because the court's finding that the courtroom was not closed is not clearly erroneous, we hold that the circuit court did not abuse its discretion in denying Douglas's motion for new trial.

*Douglas*, 2017 Ark. 70, at *3-4, 511 S.W.3d at 854-55.

In his Report and Recommendation (ECF No. 10), Judge Bryant, citing the Arkansas Supreme Court's analysis of the issue, found that the circuit court's decision was not based on an unreasonable determination of the facts. Douglas argues that Judge Bryant erred by not analyzing the circuit court's findings to determine if they were unreasonable. However, Judge Bryant did briefly analyze the circuit court's factual findings and concluded that the circuit court's decision was entitled to substantial deference and that the findings of facts concerning the credibility of the witnesses were reasonable. The Court agrees with Judge Bryant. The circuit court's findings were based primarily on its assessment of the credibility of the witnesses, and the circuit court found that the testimony of Douglas's family members that they were prevented from entering the courtroom was without credibility. The circuit court was in a superior position to evaluate the credibility of the witnesses, and its interpretation of the facts was reasonable given the testimony and evidence presented. Accordingly, the Court finds that Douglas's claim that he was denied his Sixth Amendment right to a public trial should be denied.

### B. Destruction of Evidence

Douglas claims that security officers at the Union County Circuit Court either "destroyed

evidence or allowed the destruction of evidence" that would have proven the alleged Sixth Amendment violation. ECF No. 1, at 9. Prior to the hearing on the motion for new trial, the state gave notice to the courtroom information technology manager that the video footage from inside the courtroom on the day of voir dire should be preserved. The state reasoned that because Douglas claimed that a "bailiff" and not a "courtroom security officer" prevented the family members from entering the courtroom, it only asked to preserve video footage from inside the courtroom, where bailiffs are located. Because bailiffs are not located outside the courtroom, the state did not ask to preserve video footage from outside the courtroom, where the courtroom security officers are located. At the hearing, the court's information technology manager testified that the video footage from outside the courtroom had not been preserved and was recorded over automatically after approximately thirty days had passed.

Douglas's argument that "officers of the Court" intentionally destroyed evidence was not raised in state court. A habeas petitioner must "fairly present" his or her claims in state court before seeking habeas relief in federal court. *See Murphy v. King*, 652 F.3d 845, 848-49 (8th Cir. 2011); *see also* 28 U.S.C. § 2254(b)(1)(A) ("An application for a writ of habeas corpus . . . shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the State"). When a petitioner fails to fully exhaust his claims in state court, and the time to do so has passed, the petitioner's claims are procedurally defaulted. *See Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991). Douglas never presented to state court the precise issue of the alleged intentional destruction of evidence by "officers of the Court." Accordingly, the Court agrees with Judge Bryant that this claim is procedurally defaulted, and the Court cannot consider it.

### C. Ineffective Assistance of Post-Conviction Counsel

Douglas's next claim is also based on the availability of video footage from outside the courtroom on the day his family members were allegedly excluded from voir dire. Douglas argues that his "post-trial" counsel was ineffective because he failed to "seek forensic analysis to retrieve [this] video recording" from the court security system's hard drive and failed to seek affirmative relief based on the state's "destruction" of this footage. ECF No. 1, at 9-11.

In his Report and Recommendation, Judge Bryant found that Douglas's ineffective assistance of counsel claim was procedurally defaulted because it was not presented to the state court, and the Court agrees. The issue now becomes whether the procedural default may be excused pursuant to *Martinez v. Ryan*, 566 U.S. 1 (2012). Judge Bryant found that it could not and recommends dismissal of this claim. The Court agrees.

"[A] federal court may hear a procedurally defaulted claim for postconviction relief only if the petitioner shows 'cause' for and 'prejudice' from the procedural default." *Dorsey v. Vandergriff*, 30 F.4th 752, 755 (8th Cir. 2022) (citing *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977)). Because there is no Sixth Amendment right to post-conviction counsel, ineffective assistance of post-conviction counsel generally does not constitute cause for procedural default. *Coleman v. Thompson*, 501 U.S. 722, 752 (1991). However, the Court carved out an exception to this rule in *Martinez*. In a narrow range of *habeas* cases, a petitioner may rely on the ineffective assistance of post-conviction counsel to set aside a procedural default if that ineffective assistance of counsel occurred at the initial step of petitioner's state post-conviction proceedings. *See Martinez v. Ryan*, 566 U.S. 1 (2012); *see also Trevino v. Thaler*, 569 U.S. 413, (2013). The *Martinez* exception is limited to instances where a petitioner procedurally defaults on an ineffective assistance of trial counsel claim and that procedural default was caused by the

separate ineffective assistance of post-conviction counsel. *See Martinez*, 566 U.S. at 17. Therefore, a petitioner can avoid a procedural default in instances where the ineffective assistance of post-conviction counsel caused a procedural default and that default bars the petitioner from presenting his or her ineffective assistance of trial counsel claim on federal habeas review. *See id.*; *see also Trevino*, 413 U.S. at 429.

The Court notes that, in his petition, Douglas did not raise the issue of whether the *Martinez* exception applies to his ineffective assistance of post-conviction counsel claim. It was Respondent Payne who initially brought up *Martinez* in his response to Douglas's petition, arguing that the exception does not apply here because the ineffective assistance of counsel claim is directed at only his post-conviction counsel and not related to Douglas's trial counsel. The first time Douglas argues that the *Martinez* exception is available to him is in his reply brief. ECF No. 9.

Douglas asserts that the *Martinez* exception applies because his post-trial counsel was performing the role of "trial counsel" and not post-conviction counsel when he failed to seek forensic analysis to recover the deleted video footage. In support of this argument, Douglas cites a Third Circuit case, *Richardson v. Superintendent Coal Township SCI*, which holds that the boundary between trial and appellate counsel falls at the effective date of the notice of appeal. 905 F.3d 750, 761-62 (3rd Cir. 2018). Judge Bryant does not address this argument in his Report and Recommendation.

Instead, Judge Bryant analyzes Douglas's ineffective assistance of counsel claim through the lens of *Martinez*, thereby assuming that Douglas's attorney was performing the role of trial counsel when he failed to seek forensic analysis to recover the deleted video footage. Judge Bryant ultimately concluded that Douglas's ineffective assistance of counsel claim was not

"substantial," and thus the *Martinez* exception does not apply to set aside Douglas's procedural default. The Court agrees with this conclusion; however, whether Douglas's attorney was performing the role of trial counsel or postconviction counsel is less clear.

The narrow *Martinez* exception does not apply to claims of ineffective assistance of postconviction appellate counsel or claims of ineffective assistance of counsel on direct appeal. *Martinez*, 566 U.S. at 16. Douglas was represented by a public defender at trial, and then he retained different counsel prior to the filing of his notice of appeal. Douglas's retained attorney filed his motion for new trial, his notice of appeal, and his Rule 37.1 petition. The Court is not aware of any cases where the Eighth Circuit has defined, for purposes of *Martinez*, the boundary between acting as trial counsel and acting as postconviction appellate counsel. However, the Court need not decide this issue to resolve Douglas's ineffective assistance of counsel claim, because the claim is not substantial under *Martinez*. Thus, *Martinez* cannot apply to excuse the procedural default of this claim.

For *Martinez* to apply to excuse the procedural default of Douglas's ineffective assistance of counsel claim, Douglas must show that his postconviction counsel failed to assert a "substantial" claim of ineffective assistance of trial counsel, meaning that the claim must have "some merit." *Martinez*, 566 U.S. at 14 (citing *Miller-El v. Cockrell*, 537 U.S. 322 (2003)). This "some-merit requirement 'means that whether [the claimant's] trial counsel was ineffective . . . must at least be debatable among jurists of reason.'" *Dorsey*, 30 F.4th at 757 (quoting *Taylor v. Steele*, 6 F.4th 796, 801 (8th Cir. 2021). By contrast, an insubstantial claim "does not have any merit or . . . is wholly without factual support. *Martinez*, 566 U.S. at 15-16.

To consider whether an ineffective assistance claim is substantial, the Court uses the standard set by *Strickland v. Washington*, 466 U.S. 668, 687-88, 691-92 (1984). Douglas must

show that his trial counsel's conduct "fell below an objective standard of reasonableness . . . under prevailing professional norms," and that counsel's "professionally unreasonable" conduct "prejudiced the defense." *See Sund v. Young*, No. 5:14-cv-5070 KES, 2015 WL 4249405, at *4 (D.S.D. July 13, 2015) (collecting cases applying *Strickland* in a *Martinez* context).

To show prejudice, Douglas "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "Judicial scrutiny of counsel's performance is highly deferential, indulging a strong presumption that counsel's conduct falls within the wide range of reasonable professional judgment." *Bucklew v. Luebbers*, 436 F.3d 1010, 1016 (8th Cir. 2006). If Douglas does not meet the "heavy burden" of satisfying *Strickland*, *see United States v. Apfel*, 97 F.3d 1074, 1076 (8th Cir. 1996), then his "ineffective-assistance-of-counsel claim is 'without merit' and cannot be deemed to be a 'substantial' claim under *Martinez*." *Wright v. Hobbs*, No. 5:13-cv-210 KGB-JTR, 2015 WL 2374184, at *6 (E.D. Ark. May 18, 2015).

First, the Court finds that the conduct of Douglas's counsel was reasonable. In a motion for new trial, counsel raised the issue of Douglas's family allegedly being excluded from the courtroom. The state trial court held a hearing on that motion, and the parties presented evidence to support their arguments. After hearing testimony from Douglas's family members and a court security officer, the trial court concluded that the courtroom had not been closed to Douglas's family members during voir dire and that Douglas was not denied a public trial. Douglas has presented no evidence that any trial court employee or the state intentionally destroyed the video footage from outside the courtroom. The testimony from the trial court's information technology manager was that the video footage was simply recorded over automatically pursuant to the routine recording process. Accordingly, the Court cannot find that Douglas's counsel acted

unreasonably by failing to seek relief based solely on speculation that the video footage was intentionally destroyed or by failing to seek forensic analysis of the destroyed footage.

Moreover, Douglas cannot show that he was prejudiced by his counsel's actions. He alleges that his family members were denied access to the courtroom for approximately two hours during voir dire and argues that his counsel should have taken action to recover the deleted video footage and made affirmative arguments based on an intentional destruction of evidence. In his objections, Douglas argues generally that he was "prejudiced" by his counsel's actions. However, he has not shown that there is a reasonable probability that, but for counsel's alleged unprofessional errors, the result of the proceeding would have been different. In other words, he has not shown that the outcome of his trial would have been different had his counsel sought a forensic analysis to retrieve the recorded over video footage and moved for affirmative relief based on the state's alleged "destruction" of the video footage.

Upon *de novo* review, the Court finds for the reasons stated by Judge Bryant and for the reasons stated above, that Douglas's trial counsel's failure to seek a forensic analysis related to the recorded over video footage and failure to file a motion for affirmative relief based on the "destruction" of this footage do not satisfy the *Strickland* standard. Thus, Douglas's claim is not substantial under *Martinez*. Because the claim is not substantial, Douglas's post-conviction counsel did not err by failing to assert this claim of ineffective assistance of trial counsel. Accordingly, the Court finds that this claim should be denied.

**D. Ineffective Assistance of Trial Counsel (Failure to Request Justification Instruction)**

Douglas claims that his trial counsel was ineffective for not requesting a jury instruction regarding justification. For purposes of 28 U.S.C. § 2254(d), this claim was adjudicated by the Arkansas Supreme Court and that decision is entitled to deference. *See Worthington v. Roper*,

631 F.3d 487, 495 (8th Cir. 2011) (regarding habeas petitions, federal courts undertake a limited and deferential review of underlying state court decisions). Because Douglas claims his trial counsel was ineffective, Judge Bryant applied the two-part *Strickland* standard but noted that this standard was likely more lenient than what should be applied. *See Harrington v. Richter*, 562 U.S. 86, 101-02 (2011) (recognizing the AEDPA bar is a high one that requires more than a *Strickland* violation when the claim was previously adjudicated in state court).

Douglas was convicted of first-degree murder and possession of a firearm. He was sentenced to life imprisonment for the murder conviction plus an additional fifteen years of imprisonment for the use of a firearm during the commission of the felony. For his possession-of-a-firearm charge, Douglas was sentenced to forty years of imprisonment. Douglas's convictions stem from an altercation between the victim, Terrance Billings, and Douglas. The record demonstrates the following facts.

Douglas and Billings got into a verbal altercation at Douglas's home. Once that altercation concluded, Billings returned to his home. Douglas then retrieved a firearm, drove to Billings's home, and initiated a second encounter. Billings's girlfriend, Jennifer Henry, answered the door, and she testified that Douglas came to their home uninvited. She further testified that when she answered the door, Billings pushed Douglas outside the door and turned back around. At that point, Henry heard a gunshot, and she testified that Douglas came inside the home and continued to shoot Billings where he had fallen on the floor. Henry's son testified that he witnessed Billings and Douglas "tussling" on the porch and that Billings was inside the home when Douglas began shooting Billings. Henry's father testified that he witnessed Douglas and Billings scuffling on the porch and that it looked like Billings had Douglas in a headlock at some point while Henry was standing behind them. Sergeant Jim Sanders with the Union

County Sheriff's Office testified that upon arriving at the crime scene, there did not appear to be any blood, tissue, or other bodily fluids on the porch or door. However, inside the threshold, but not on the threshold itself, there appeared to be bodily fluid. The chief investigator of the Union County Sheriff's Office, Ricky Roberts, testified that there was no blood on the porch and that, based on the evidence, it was apparent Billings was shot while standing inside the house. Douglas did not testify at trial.

In his petition for postconviction relief filed in state court, Douglas argued that his trial counsel was ineffective for failing to present the proper jury instruction on justification. The Arkansas Supreme Court found there was no rational basis for giving a justification instruction and held that the trial counsel's failure to request the instruction did not fall below an objective standard of reasonableness. The Arkansas Supreme Court further held that Douglas failed to establish that it was reasonably likely that a justification instruction would have made a difference in the outcome of his trial considering "all the other evidence of Douglas's guilt." *Douglas*, 2018 Ark. 89, at *9, 540 Ark. S.W.3d at 690. The Arkansas Supreme Court determined that Douglas failed to prove either *Strickland* prong. Judge Bryant agreed with the Arkansas Supreme Court's conclusion that Douglas failed to establish that a justification instruction would have changed the outcome of his case. Thus, Judge Bryant concluded that Douglas has not demonstrated that his counsel was ineffective.

The Court agrees with the analysis of both the Arkansas Supreme Court and Judge Bryant. At the time of the incident, Arkansas law prohibited the use of deadly physical force in self-defense if a person knew that he could avoid the necessity of using that force with complete safety by retreating. Ark. Code Ann. § 5-2-607(b)(1) (effective July 22, 2015 to July 27, 2021). Further, one who claims self-defense must show not only that the person killed was the

aggressor, but also that the accused used all reasonable means within his power and consistent with his safety to avoid the killing. *Ricketts v. State*, 292 Ark. 256, 258, 729 S.W.2d 400, 402 (1987). "[A] party is entitled to an instruction on a defense if there is sufficient evidence to raise a question of fact or if there is any supporting evidence for the instruction." *Yocum v. State*, 325 Ark. 180, 190, 925 S.W.2d 385, 390 (1996).

The evidence in the case showed that Douglas armed himself, went to the victim's home to confront him, and then shot the victim as he attempted to retreat. Douglas argues that the testimony indicating that Billings put Douglas in a headlock provides a rational basis for giving a justification instruction. However, Douglas's argument ignores the evidence that showed that Douglas was the aggressor in this second encounter, and he shot the victim after the victim attempted to retreat. The testimony that Billings held Douglas in a headlock at some point before the shooting does not negate the undisputed fact that Douglas shot Billings, who was unarmed, as he was attempting to retreat inside his home. The testimony regarding the headlock is not sufficient evidence to raise a question of fact concerning a justification defense or to support a justification instruction. Moreover, even if this instruction would have been given, Douglas has not established that it was reasonably likely that it would have made any difference in the outcome of his trial in light of all the other evidence of his guilt.

Accordingly, Douglas's trial attorney's failure to request a justification instruction was not professionally unreasonable. Further, the Court finds that Douglas has not established it was reasonably likely that the giving of a justification instruction would have made any difference in the outcome of the trial. Because Douglas has failed to prove either *Strickland* prong, the Court cannot find that his counsel was ineffective. Therefore, the Court finds that this claim should be denied.

### E. Ineffective Assistance of Trial Counsel (Failure to Request Manslaughter Instruction)

Claim Five in Douglas's Petition is entitled "Insufficient Evidence to Convict of First Degree Murder Under Justified Deadly Physical Force." ECF No. 1, at 14. He states that "[b]ecause the Petitioner was justified in his actions under the circumstances, the evidence of first degree murder is lacking . . . violating Due Process under the Fourteenth Amendment." ECF No. 1, at 15. In his response, Payne construes this claim as an insufficiency of the evidence claim. Judge Bryant also construes the claim this way and finds that because Douglas did not raise an insufficiency of the evidence claim in state court, the claim is inexcusably procedurally defaulted.[3]

In his objections to the Report and Recommendation, Douglas argues that "it is clear from the body of the claim that [he] is alleging a violation of his due process rights when he was not allowed to present a jury instruction on manslaughter."[4] ECF No. 14, at 11. Douglas points out that, in his direct appeal, he presented to the Arkansas Supreme Court the argument that the circuit court erred in denying his jury instruction on extreme-emotional-disturbance manslaughter. The Arkansas Supreme Court held that this argument was not preserved for appeal because Douglas's attorney did not proffer the correct extreme-emotional-disturbance manslaughter jury instruction, and this failure did not fit within any exception to the contemporaneous-objection rule. Douglas concludes that, because this claim was raised in state court, it has been exhausted and is not procedurally defaulted.

The Court, like Payne and Judge Bryant, is confused by Douglas's argument. Payne

---

[3] Douglas does not object to Judge Bryant's finding that an insufficiency of the evidence claim is procedurally defaulted because it was not raised in state court. Instead, Douglas argues that Judge Bryant misconstrued this claim.
[4] The Court notes that Douglas was representing himself when he filed his Petition, but his objections to the Report and Recommendation were filed by an attorney representing Douglas.

assumes that if the claim is not construed as a sufficiency of the evidence claim, it must be an ineffective assistance of counsel claim based on counsel's failure to present the correct jury instruction on emotional-disturbance manslaughter.  ECF No. 19, at 10.  However, it does not appear to the Court that Douglas is arguing that his trial counsel was ineffective regarding the manslaughter instruction.  In his Petition, Douglas makes other ineffective assistance of counsel claims and uses specific and accurate terms to describe his claims.  ECF NO. 1, at 11.  In fact, Douglas makes a clear argument that his counsel was ineffective for failing to request a justification instruction.  Douglas does not make this same argument as it relates to a manslaughter instruction.  Instead, Claim Five of his Petition references a violation of his right to "Due Process under the Fourteenth Amendment."  ECF No. 1, at 15.  Thus, the Court interprets Claim Five as a claim that Douglas was denied due process because the state trial court refused to instruct the jury on manslaughter.

Douglas's claim—that he was denied due process because the trial court refused to instruct the jury on manslaughter—cannot be considered on the merits in this federal habeas corpus proceeding because this claim has not been fairly presented to the Arkansas Supreme Court.  When a state appellate court expressly declines to address a particular claim on the merits because the claim was not raised in accordance with applicable state procedural rules, the claim has not been fairly presented to the state courts, and it is then treated as a procedurally defaulted claim for federal habeas purposes.  *Hall v. Delo*, 41 F.3d 1248, 1250 (8th Cir. 1994).

Douglas contends that his claim is preserved because he presented it to the state court.  The claim Douglas presented to the Arkansas Supreme Court was that the trial court erred in denying his jury instruction on extreme-emotional-disturbance manslaughter.  *Douglas v. State*, 2017 Ark. 70, at *4, 511 S.W.3d at 855.   Douglas's claim was based on the argument that the

trial court misapplied Arkansas law by failing to give the jury the lesser-included offense instruction on extreme-emotional-disturbance manslaughter. Douglas did challenge the trial court's ruling on the manslaughter jury instruction issue in his direct appeal; however, he did not challenge the constitutionality of that ruling, as he is attempting to do now. His appellate brief did not mention the Fourteenth Amendment or the term "due process." ECF No. 8-3. If Douglas intended to challenge the constitutionality of the instructions given to the jury, he did not fairly present that challenge to the Arkansas Supreme Court. Consequently, this constitutional claim is not preserved for federal habeas review.

The Court notes that a procedurally defaulted claim could be entertained in a federal habeas corpus proceeding if a petitioner shows "cause and prejudice" to excuse his procedural default, or, in the alternative, that there would be a "fundamental miscarriage of justice" if the federal court declined to consider the claim. *Coleman*, 501 U.S. at 750 (1991). However, Douglas does not argue that any of these exceptions apply to excuse his procedural default.

### III. CONCLUSION

Being well and sufficiently advised, and upon *de novo* review of all specific objections, the instant report and recommendation (ECF No. 10) is hereby **ADOPTED** for the above-stated reasons. Douglas's Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (ECF No. 1) is **DENIED** and **DISMISSED WITH PREJUDICE**.

When entering a final order adverse to a habeas corpus petitioner, the Court must issue or deny a certificate of appealability. *See* Rule 11, Rules Governing § 2254 Cases. A certificate of appealability may issue only if a petitioner has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(1)-(2). In this case, the Court finds no issue on which Petitioner has made a substantial showing of a denial of a constitutional right. Accordingly, a

certificate of appealability is **DENIED**.

**IT IS SO ORDERED**, this 16th day of February, 2023.

/s/ Susan O. Hickey
Susan O. Hickey
Chief United States District Judge